

**FILED**
**MARCH 1, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34107-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| ANTHONY RENE VASQUEZ, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Under Washington law, a drive-by shooting requires a close nexus between a perpetrator and vehicle. Specifically, the perpetrator must either be inside a vehicle at the time of the shooting or within the vehicle's immediate area. Anthony Vasquez ran 63 feet from his vehicle and around the corner of a grocery store prior to shooting and killing Juan Garcia. While Mr. Vasquez's violent conduct fell well within the definition of first degree murder, it was not a drive-by shooting. As a result, Mr. Vasquez's drive-by shooting convictions and sentence aggravator must be reversed. The remainder of his convictions are affirmed.

FACTS

Mr. Vasquez shot and killed Mr. Garcia as Mr. Garcia was seated in the front passenger side of a GMC Envoy parked at the Airport Grocery in Moses Lake, Washington.  Mr. Garcia's girlfriend was in the front driver's seat and her five-year-old child was in the back seat, behind Mr. Garcia.  Neither Mr. Garcia's girlfriend nor her child were physically injured during the shooting.



At the crux of this appeal is the route Mr. Vasquez took to shoot Mr. Garcia.  Figure 1 is an annotated aerial map of the area. *See* Ex. P4.

For several minutes prior to the shooting, the Envoy was parked near the Airport Grocery's front entrance.  Mr. Vasquez then arrived at the scene in a Toyota pickup.  The Toyota was parked on the side of the grocery, next to a fenced utility area, approximately 63 feet away from the Envoy.  Once

the Toyota was parked, Mr. Vasquez ran from the pickup and hid behind the utility fence

for nearly a minute. Mr. Vasquez then rushed around the corner of the grocery, across the

front-side of the Envoy, and over to the area of the front passenger window of the Envoy.

The front window was partially rolled down, exposing Mr. Garcia to Mr. Vasquez. Mr.

Vasquez shot and killed Mr. Garcia from point-blank range. Mr. Vasquez then retreated

to the Toyota and it sped away.

The entire shooting was captured on video by the grocery's surveillance system.

Approximately one minute and 16 seconds elapsed between the Toyota's initial arrival

and ultimate departure.

A jury convicted Mr. Vasquez of first degree murder with a drive-by shooting

aggravator, along with several counts of drive-by shooting.[1] Mr. Vasquez was sentenced

to life imprisonment without parole for the aggravated first degree murder conviction. He

also received a 60-month firearm enhancement. Mr. Vasquez appeals. He has also filed a

statement of additional grounds for review.

---

[1] Mr. Vasquez was also convicted of several additional counts, none of which are pertinent to the published portion of this opinion. Mr. Vasquez's multiple drive-by shooting counts pertained to Mr. Garcia's girlfriend, her five-year-old child, and an unnamed victim.

3

ANALYSIS

Washington's drive-by shooting statute states, in pertinent part:

> A person is guilty of drive-by shooting when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or *from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge*.

RCW 9A.36.045(1) (emphasis added).[2]

Mr. Vasquez argues the evidence was insufficient to prove a drive-by shooting. The question is whether the State's evidence showed Mr. Vasquez was in the "immediate area" of the Toyota pickup truck at the time of the shooting. Viewing the evidence in the light most favorable to the State, *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992), we hold the "immediate area" requirement was not met.

In *State v. Rodgers*, our Supreme Court addressed what is meant by "immediate area" in the drive-by shooting context. 146 Wn.2d 55, 43 P.3d 1 (2002). Noting the drive-by shooting definition is "narrowly drawn," *id*. at 61, *Rodgers* held a two-block distance between a shooter and his vehicle does not fall within the scope of a drive-by

---

[2] The statute governing the drive-by shooting aggravator only requires that the firearm was discharged "either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge." RCW 10.95.020(7).

shooting. *Rodgers* looked to two dictionary definitions of "immediate" in reaching this conclusion. *Id*. at 62. The first defined "immediate" as "'existing without intervening space or substance . . . being near at hand: not far apart or distant.'" *Id*. (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1129 (1986)) (alteration in original). The second defined "immediate" as "'[n]ot separated in respect to place; not separated by the intervention of any intermediate object.'" *Id*. (quoting BLACK'S LAW DICTIONARY 749 (6th ed. 1990)) (alteration in original).

While the 63-foot distance at issue here is less than the two blocks discussed in *Rodgers*, the outcome is the same. A drive-by shooting is commonly understood to involve shots fired from inside a vehicle, or from "within a few feet or yards" of the vehicle. *State v. Locklear*, 105 Wn. App. 555, 561 & n.11, 20 P.3d 993 (2001), *aff'd sub nom. Rodgers*, 146 Wn.2d 55. In other words, the crime contemplates a shooter who is either inside a vehicle or within easy reach of the vehicle. *Rodgers*, 146 Wn.2d at 62 (immediate means "near at hand"). Mr. Vasquez's offense did not fall within either circumstance. Mr. Vasquez was far from reach of the Toyota at the time he shot Mr. Garcia. In fact, Mr. Vasquez had to traverse several intervening obstacles in order to get a clear shot at his victim. Although Mr. Vasquez was in the immediate area of Mr. Garcia's Envoy at the time of the shooting, he was not in the immediate area of the

Toyota that had transported him to the scene. Mr. Vasquez's offense therefore does not qualify as a drive-by shooting.

Because Mr. Vasquez was neither inside the Toyota nor within immediate reach of the Toyota at the time of the shooting, the State failed to present sufficient evidence justifying Mr. Vasquez's convictions for drive-by shooting as well as the drive-by shooting aggravator to Mr. Vasquez's first degree murder conviction. The drive-by shooting convictions and aggravator must therefore be reversed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Our disposition of the drive-by shooting issue resolves the issues raised by Mr. Vasquez in his appeal. Without proof of a drive-by shooting, counts four, five, and six (all of which charged drive-by shooting) must be dismissed. In addition, Mr. Vasquez's sentence for aggravated first degree murder must be reversed, with instructions to strike the drive-by shooting aggravator. On remand, Mr. Vasquez must be sentenced for nonaggravated first degree murder, which is a term sentence. *See* RCW 9.94A.510, .515. The 60-month firearm enhancement will follow his ultimate sentence.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Vasquez raises a number of issues in his statement of additional grounds for review (SAG). None of them warrant further relief from his judgment and sentence. We briefly address those of Mr. Vasquez's claims not rendered academic by our resolution of his drive-by shooting claims and the trial court's dismissal of his second degree felony murder conviction.[3]

Mr. Vasquez attacks the sufficiency of the State's evidence by arguing witnesses were not credible or engaged in misconduct. *See* SAG (1)(A). These arguments fail because they do not construe the evidence in the light most favorable to the State, as required by the applicable standard of review. *Salinas*, 119 Wn.2d at 201.

Similarly, Mr. Vasquez claims the court erroneously denied defense counsel's motion to exclude introduction of the firearm associated with the shooting into evidence. *See* SAG 2(C). The trial court correctly ruled that Mr. Vasquez's arguments went to the weight of the evidence, not admissibility.

Mr. Vasquez claims the prosecutor engaged in misconduct during opening statement, witness questioning, and summation. *See* SAG 2(A), 4. To the extent the

---

[3] SAG 1(C) is rendered academic by our disposition of the drive-by shooting issue. SAG 1(B) is rendered moot by the trial court's dismissal of Mr. Vasquez's second degree murder conviction.

7

record permits review of Mr. Vasquez's claims, we find no misconduct. The prosecutor obtained prior approval to play the 911 call to the jury during opening statement. None of the prosecutor's questions to witnesses were inappropriate or sought inadmissible evidence. The prosecutor's closing argument was fair, given the nature of the evidence, including Mr. Vasquez's own stipulations. None of the prosecutor's comments undermined the State's burden of proof or amounted to witness vouching.

In addition to challenging the prosecutor's performance, Mr. Vasquez argues his trial counsel failed to provide effective assistance. *See* SAG 5. To the extent the record permits our review of his claims, Mr. Vasquez has failed to show that any problems with trial counsel's conduct were prejudicial. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Mr. Vasquez also argues the jury should have been instructed on lesser included offenses. *See* SAG 3. He did not request any such instructions from the trial court. Mr. Vasquez may not raise that issue for the first time on appeal. *See State v. Mounsey*, 31 Wn. App. 511, 518, 643 P.2d 892 (1982).

Finally, Mr. Vasquez raises claims regarding improper use of a video and photograph during the prosecutor's opening statement (SAG 4), denial of his motion for

new counsel (SAG 2(B)), and trial counsel's failure to share evidence prior to trial (SAG 5(D)). These arguments rest on facts outside the appellate record. The appropriate forum for resolution is a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

## CONCLUSION

Mr. Vasquez's convictions for drive-by shooting are reversed with prejudice. The drive-by shooting aggravator attached to Mr. Vasquez's first degree murder conviction is stricken. Mr. Vasquez's sentence is reversed and this matter is remanded for resentencing, consistent with the terms of this opinion.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

9